PERRY E. MOORE AND THE CHASE NATIONAL BANK OF THE CITY OF NEW YORK, EXECUTORS OF THE WILL OF CLEMENT MOORE, DECEASED, PROSECUTORS, v. J. H. THAYER MARTIN, STATE TAX COMMISSIONER, DEFENDANT.

Argued May 8, 1940—Decided July 17, 1940.

Before Justices CASE, DONGES and HEHER.

For the prosecutors, *Pitney, Hardin & Skinner* (*Charles R. Hardin,* of counsel).

For the defendant, *David T. Wilentz,* attorney-general (*William A. Moore,* of counsel).

The opinion of the court was delivered by

HEHER, J.   The question here is whether an *inter vivos* gift of property, by the testator to his son, was made "in contemplation of death" within the intendment of section 1 of chapter 228 of the laws of 1909, as amended by chapter 90 of the laws of 1935 (*Pamph. L.* 1909, *p.* 325; *Pamph. L.* 1935, *p.* 264; now *R. S.* 1937, 54:34-1), and is consequently a taxable transfer.

The testator died on August 3d, 1937. He was then the senior member of the firm of Robert Moore & Co., cotton merchants and brokers of the city of New York. He had been associated with this firm for about sixty years. The donee was his only child. The son entered the firm as a junior member in 1924. The gift in litigation was made on June 27th, 1935. It consisted of a transfer by testator of $60,000 of his capital account in the firm to that of his son. In the federal gift tax return made by the donor at the time, he certified that "a transfer of funds was made to my son * * * to provide capital for business 6/27/35—$60,000."

Some three weeks before this transfer, the donor made his will, leaving his estate (with the exception of a few general legacies) to his wife and son in equal shares, and providing that the son's share should "be paid and transferred to him as soon as conveniently may be after" the testator's demise; and the Prerogative Court, in sustaining a succession tax assessment made by the State Tax Commissioner, concluded that "the natural inference" to be drawn from the evidence "is that after making the will," the testator "determined to transfer this much of his property to his son immediately instead of waiting for the transfer which he had provided should occur at his death under his will; that it was made as the result of a considered choice between testamentary transfer and present transfer; that it was therefore a transfer made with the intent and purpose that it should be in the place and stead of a testamentary final disposition of that much of his estate, and hence was a transfer made in contemplation of death * * *." We do not entertain this view.

While the testator was in his seventy-ninth year when the gift was made, his health was unusually good for a man of his age. He was very active in business and the ordinary pursuits of life; and there is nothing to suggest awareness of mortal disease, or apprehension of death in the near future. His physician testified that his "organic condition was good, no high blood pressure, no heart leakage, no severe arterio sclerosis or hardening of the arteries and pretty good circulation for a man of his years, very, very good." His was a family of singular longevity. His father died in his ninety-fifth year; and the deceased was survived by three brothers all beyond seventy-five years of age. He continued his customary business and other activities until ten days before his death. There had been no discernible physical or mental impairment. The cause of death was bronchial pneumonia; and the attending physician certified that a contributing cause was "chronic arthritis—1934." The physician testified, however, that this latter statement was a "typographical error," and that, as regards the onset of the chronic arthritic condition, the word "indefinitely" should be substituted for "1934."

While the gift was large, it was the last of a series of substantial gifts by the father to his son over a period of years: 1918—$15,000; 1924—$25,000; 1926—$10,000; 1927—$20,000; 1928-31—$16,437; and 1932—$5,700.

All these gifts, except the one made in 1918, were effected, as was the gift under consideration, by transfers of credit on the books of the firm. The gifts of $25,000 (in 1924) and $5,700 (in 1932) were made to enable the son to buy memberships in the New York Cotton Exchange and the National Raw Silk Exchange, respectively.

As we read his unreported conclusions, the learned vice-ordinary considered these as decisive circumstances: The donor's age; the making of the will and gift a "few months after" a "flare-up" of a condition of arthritis in existence "some fifteen to twenty years * * * which spasmodically caused a swelling in his hands and feet;" the devise of the bulk of his estate to his wife and son in equal shares, with a provision that the son's share should be paid as soon as convenient after his death; the gift was made to his only child, "a natural recipient of his estate at his death," and "consisted of more than one-quarter of decedent's capital interest in a firm he had served for sixty years," and "constituted approximately twenty-one per cent., or over one-fifth, of his total assets."

Granting that it "is doubtless true" that "a concurrent motive for the transfer" was "to increase the capital interest" of the donor's son "who was then assuming a more active and responsible part in the firm's affairs," the vice-ordinary nevertheless concluded that "the controlling cause for the making of the gift was 'contemplation of death'—the desire to make a disposition of his estate in lieu, *pro tanto*, of the testamentary disposition he had shortly before provided." It was held that, while there was "substantial evidence to support" the commissioner's finding that the transfer was made "in contemplation of death," and it was not the province of the Prerogative Court "to substitute its judgment on this question of fact for that of the commissioner" (we express no opinion as to this), the finding "is supported by the clear weight of the evidence."

Unlike the case of *Perry* v. *Martin,* 125 *N. J. L.* 46, there rests upon the respondent here, since the transfer was not made within two years prior to the death of the donor, the onus of establishing by evidence that it was made "in contemplation of death," *i. e.,* that it was motivated by those considerations which lead to testamentary disposition of property; and in our view this burden has not been sustained.

The motive is the determinative. The inducement is a fact in issue; and the particular state of mind requisite to the imposition of the transfer tax must of necessity be the subject of some external manifestation that meets the legal standard of proof. What purport to be the indicia of a mental state are ofttimes but seeming and illusive; and care is to be taken that the things relied upon as a revelation of motive are not distorted beyond their real significance. The law will not pronounce a definitive judgment as to what lies in the mind and breast of the donor upon outward tokens that are equivocal.

It may well be that "contemplation of death" in the statutory sense was the impelling cause of the transfer, but the evidence does not bring that hypothesis within the realm of probability. To hold that it does, in our view, is to indulge in surmise and conjecture. The law does not proceed upon mere possibilities in inferring a state of mind from proven facts.

True, the donor was advanced in years, and, by the transfer under review, he gave of his substance in large part to his son and only child, a natural object of his bounty; but, as against these and other considerations offered to support the inference essential to taxability, we have the series of like gifts over the years, none of which was assessed as made in contemplation of death, and the donor's extraordinarily good health for a man of his years, and his undoubted desire—conceded by the vice-ordinary—"to increase the capital interest" of his son in consonance with his expanding responsibilities in the management of the firm's affairs.

Age alone is not decisive. And the fact that this gift exceeded in amount each of the prior gifts is certainly not a

conclusive circumstance when it is considered that one of the prior gifts was $25,000; and that they were all of sizeable sums, and totaled $92,137. Rather, it is fairly inferable that the donor thereby designed to provide a greater measure of economic stability and security for his son, as regards the firm's business and otherwise. The latter testified that from 1932 to 1935 there had been "a general slump in business," and he "had been under considerable personal expenses, due to sickness in" his family, whereby his "capital account" had been "depleted * * *; most of" his "capital account was used up and this transfer was made inasmuch as" he "was assuming a very responsible part of the business." We find corroboration of this in the firm's accounts. At the close of the year 1934, the son's capital account amounted to $11,000; at the end of the year 1935, notwithstanding the gift in question, it aggregated but $52,700; and, at the close of the year 1936, there had been a further reduction to $40,000.

The bestowal of such gifts had been the donor's consistent policy over the years. The earlier transfers were all ample; and it would indeed be an illusory test to hold that this gift is in a radically different category merely because of its sum. The bare fact that the deceased made to his son a substantial gift of property that would in all likelihood pass to him upon the father's death, if the gift had not been effected, does not render it one made in contemplation of death within the intendment of the statute. If that were so, a gift by a parent to his child of a material part of his estate, no matter what and how compelling the circumstances, would *ipso facto* be taxable as one made in contemplation of death.

If the moving cause of the transfer was to provide for the donee's immediate needs, or thereby to supply the means essential to the assumption of a greater interest and responsibility in the firm's business, the motive had relation to matters pertaining to life rather than death, even though the donor also reflected that, barring the unforeseen, the donee would be the recipient of the subject-matter of the gift or its equivalent upon the donor's death. In that situation, the gift could not be said to have been influenced by "the thought of death, as a controlling motive prompting the dispo-

sition of property." *United States* v. *Wells,* 283 *U. S.* 102; 51 *S. Ct.* 446; 75 *L. Ed.* 867; *Perry* v. *Martin, supra.*

The gift is plainly not to be deemed an intended execution *pro tanto* of the testamentary scheme embodied in the will lately made, *i. e.,* an equal division of the donor's residuary estate between his wife and child, and therefore a disposition of his property in anticipation of his death, and with particular reference to that event, for he did not, then or thereafter, give the equivalent to his wife, nor make such change in his will as would be requisite on that hypothesis. When he undertook, on February 11th, 1936, to add a codicil to his will, it was limited to a revocation of the general legacy of $1,000 to his daughter-in-law. He did not embrace the opportunity to provide for a different apportionment of the residuary estate between his wife and child—such as would be necessary if the original disposition were to be substantially effectuated.

Under all the circumstances, especially the donor's long continued policy of providing from time to time the means necessary to establish the son in the firm's business on a scale commensurate with his growing capacity and increasing responsibilities, and for his other immediate financial needs, we are of opinion that defendant has not met the burden of proving that the gift in question was differently motivated in the sense that, unlike the others, the inducement was the "thought of death," so as to invest it with the attribute of a mere substitute for a testamentary disposition.

The decree of the Prerogative Court is reversed, and the tax assessment in question vacated.